In re Huey P. (Mio) GREY, Ann P. (Mio) Grey f/d/b/a Grey's Swine Farm, Debtors.

COATS STATE BANK, Plaintiff,

v.

Huey P. GREY, Ann P. Grey and Beau Williams, Trustee, Defendants.

Bankruptcy No. 82–40386.
Adv. No. 82–0285.

United States Bankruptcy Court, D. Kansas.

April 18, 1983.

Patricia A. Reeder of Eidson, Lewis, Porter & Haynes, Topeka, Kan., for creditor, Coats State Bank.

Beau Williams, Topeka, Kan., trustee.

Dan E. Turner, Topeka, Kan., for debtors.

## MEMORANDUM OF DECISION

JAMES A. PUSATERI, Bankruptcy Judge.

In this chapter 7 proceeding, the creditor has requested relief from the stay, reclamation or adequate protection, seeking possession of various items of personalty.

The issues presented for determination are:

1. Is the Coats State Bank unperfected by virtue of filing a financing statement prior to the amendment of K.S.A. § 84–9–402(1) (Supp.1982).

2. Does amended K.S.A. § 84–9–402(1) (Supp.1982) apply retrospectively.

3. Which collateral is Coats State Bank entitled to reclaim.

The parties have submitted briefs and the Court is ready to rule.

## FINDINGS OF FACT

On September 6, 1976 the debtors executed a security agreement granting to the Coats State Bank (CSB) a security interest in the following collateral:

| | |
|---|---|
| 1976 1 Ton dual rear wheel Chevy PU, ID # CC5346B121994 | $9,000.00 |
| 1974 Hillsboro gooseneck train trailer, ID # 6384, style 77 | $5,000.00 |
| 1976 Featherlight gooseneck hog trailer, ID # 1275121, style Mx | $2,500.00 |
| | $16,500.00 |

The security interest was granted to "secure all obligations ... to the Bank, howsoever created ...."

On March 8, 1977 the debtors executed another security agreement granting to CSB a security interest in:

> 1973 Homette trailer home, ID # 035 11876G

The above four title vehicles were claimed by the debtors as exempt in their bankruptcy schedules.

On February 6, 1978 another security agreement was executed granting CSB a security interest in:

> All of our livestock, hog equipment, and Farm Machinery and farm equipment listed on Schedule A. See inventory dated ... and to be updated monthly Grain on hand and to be fed to livestock valued at $13,000.00 and on the above Inventory see Exhibit A.

The security interest extended to "any and all increases, additions, accessions, substitutions and proceeds thereto and therefor ...."

A financing statement was filed on March 3, 1978 covering:

> All my right title and interest in all personal property [sic] including my livestock, hog equipment, farm machinery, and other personal property [sic] now owned or hereafter acquired.

The debtors filed a chapter 7 petition in bankruptcy on May 3, 1982, and CSB seeks relief from the automatic stay, reclamation, or adequate protection of the following property:

> 1976 1 Ton dual rear wheel Chevy PU, ID # CC5346B121994
>
> 1974 Hillsboro gooseneck train trailer, ID # 6384, style 77
>
> 1976 Featherlight gooseneck hog trailer, ID # 1275121, style Mx
>
> 1973 Homette trailerhouse, ID # 035 11876 G
>
> All livestock, hog equipment, listed as: 20 hog feeders; 14 pig feeders; 44 hog crates; 8 bulk tanks; 1 grinder
>
> Grain on hand to be fed to livestock valued at $13,000 and on inventory dated 1/5/78.

The Homette trailerhouse, Featherlight Gooseneck hog trailer, Hillsboro train trailer, and the Chevy pickup are all title vehicles on which CSB has noted its lien, as reflected in exhibits H and I attached to CSB's complaint of September 27, 1982.

The debtors do not appear to contend that CSB's security interest in the titled vehicles is defective, or that CSB's perfection of this interest is defective.

The debtors have not listed grain as an asset in their petition schedules, and also have not claimed any grain as exempt. The debtors also have not claimed livestock or equipment as exempt. The trustee has not filed a complaint under 11 U.S.C. § 544, and has filed a brief agreeing that CSB should be granted reclamation.

## CONCLUSIONS OF LAW

In *First National Bank of Wakeeney v. Barr (In Re Werth)*, 443 F.Supp. 738 (D.Kan.1977), the court held a financing statement describing collateral as "all equipment now owned or hereafter acquired by debtor" was insufficient to perfect a security interest in the debtors' farm equipment. The *Werth* decision has been described as "dead wrong...." B. Clark, The Law of Secured Transactions Under the Uniform Commercial Code ¶ 2.9[5][c], at 2–46 (1980). In response to the *Werth* decision, the Kansas legislature amended K.S.A. § 84–9–402(1) (Supp.1982) to provide:

> A statement of collateral in a financing statement is adequate if it generally identifies goods by one or more of the classifications listed in K.S.A. § 84–9–109, or generally identifies other collateral by one or more of the following classifications: fixtures, documents, instruments, general intangibles, chattel paper or accounts,

Ch. 438, Kan.Sess.Laws 1978. This amendment became effective in April, 1978 after CSB filed its March, 1978 financing statement. Thus, when CSB filed its financing statement, the *Werth* decision was controlling. The Court must therefore determine whether the amendment to K.S.A. § 84–9–402(1) acted retrospectively.

In addition to the amendment to K.S.A. § 84–9–402(1), the Kansas legislature also enacted K.S.A. § 84–9–402a (Supp.1982) which provides:

**Declaration of intent of 1978 amendments.** This act is a declaration of the meaning of the uniform commercial code as originally adopted.

The general rule is that statutes operate only prospectively, unless the legislature manifests a clear intent to have a statute operate retrospectively. See, e.g., *United States v. Security Indus. Bank,* —— U.S. ——, ——, 103 S.Ct. 407, 415, 74 L.Ed.2d 235, 243–44 (1982). The Court believes the Kansas legislature's declaration of intent contained in K.S.A. § 84–9–402a is a clear expression of an intent to clarify the original meaning of K.S.A. § 84–9–402(1). Furthermore, if K.S.A. § 84–9–402(1) as amended was applied prospectively only, the Kansas legislature was surely aware of the havoc that would result in requiring massive numbers of financing statements throughout the state to be refiled. Also, the legislature was aware that *perfection or lack of perfection* of a security interest does not affect a debtor's right in property, or a creditor's rights to proceed against the property, but rather is an issue concerning the relative priorities of various creditors with rights in the same property. K.S.A. § 84–9–201, –203, –301 to –315, –401, –402, –501 to –507 (Supp.1982). Although there is a strong presumption that statutes do not act retrospectively, the Court does not believe K.S.A. § 84–9–402(1) and –402a are susceptible of any reasonable interpretation other than retrospective application. Thus, the Court believes K.S.A. § 84–9–402a is a manifestation of a clear intent to respond to the *Werth* decision and retrospectively approve generic descriptions of collateral in financing statement as set out in K.S.A. § 84–9–110 and –402(1) (Supp.1982).

Alternatively, the Court believes the amendment to K.S.A. § 84–9–402(1) and the enactment of K.S.A. § 84–9–402a was intended to cure the problems created by the holding in *Werth.*

The general rule against retrospective operation is inapplicable to curative statutes, which by their very nature are designed to affect the past . . . . [Curative] acts are by their very nature, intended to operate on past transactions, and are, therefore, necessarily retrospective . . . .

82 C.J.S. Statutes § 430(a) at 1003 (1953). Under either the theory of intended retrospective application, or curative statute, the Court holds K.S.A. § 84–9–402(1) as amended (Supp.1982) was intended to apply to all financing statements, regardless of whether the financing was filed before or after the amendment was enacted.

The debtor argues *American State Bank v. White,* 217 Kan. 78, 535 P.2d 424 (1975) is controlling. Briefly, the facts of *American State Bank* are: On May 5, 1972 Carl Ruff purchased a 1972 automobile, financed by the American State Bank of Oklahoma (ASB). ASB took a security interest in the automobile and perfected it by filing a financing statement under Oklahoma law. There was no requirement under Oklahoma law to note a lien on the title. Ruff took the car to Kansas, and in March, 1973 sold it to White, and assigned the title to White. Ruff told White that the car was free of any liens, and White did not search Oklahoma records. Ruff continued to make payments to ASB until August, 1973 when he defaulted. On November 16, 1973 ASB sought replevin of the automobile in Kansas District Court.

The Supreme Court of Kansas held that the 1962 version of the Uniform Commercial Code, adopted in Kansas and effective until January 1, 1976 provided under K.S.A. § 84–9–103(3) that if a security interest in an automobile is perfected in another state, when the automobile is moved to Kansas, the security interest remains perfected absolutely for 4 months and any buyer of the automobile within these 4 months purchases it subject to the security interest.

Effective January 1, 1976, the Kansas legislature adopted the 1972 version of article 9 of the Uniform Commercial Code, and repealed K.S.A. § 84–9–103. See Kan.Sess. Laws [1975] Ch. 514 §§ 6, 37 at 1672–76,

1704. The new article 9 provisions were contained in Senate Bill No. 27. The newly enacted K.S.A. § 84–9–103 provided that when an automobile was removed to Kansas, the creditor's security interest in the automobile would continue to be perfected for 4 months. If the security interest was not perfected in Kansas during the 4 month period, the perfection lapsed, the creditor became unperfected ab initio, and buyers during the 4 month period would purchase free of the security interest.

The Kansas Supreme Court refused to apply the newly enacted K.S.A. § 84–9–103 retrospectively absent a clear intent by the legislature. Furthermore, the Court stated:

repeal of a statute does not affect any right which accrued, any duty imposed, any penalty incurred, nor any proceeding commenced under or by virtue of the statute repealed.

*American State Bank v. White,* 217 Kan. 78, 86, 535 P.2d 424, 432 (1975).

The instant case is readily distinguishable from *American State Bank.* First, K.S.A. § 84–9–402 (Supp.1982) was not repealed, but rather was only amended. Second, *American State Bank* involved a creditor and a purchaser. It did not involve a controversy with the debtor, Mr. Ruff. As stated previously, in priority controversies between creditors, or a creditor and a purchaser, there are no debtor rights nor debtor duties affected. Perfection or lack of perfection would not affect the creditor's right to foreclose its security interest against the debtor. K.S.A. § 84–9–501 to –507 (Supp.1982). Therefore, the holding of *American State Bank* cannot be read to apply to a party whose rights are not affected. Third, and most importantly, in the instant case the legislature in K.S.A. § 84–9–402a (Supp.1982) provided a clear statement of its intent to have the amendment to K.S.A. § 84–9–402(1) apply retrospectively and/or curatively.

For these reasons, *American State Bank* is not controlling in the instant case.

■ In summary, the Court holds that although CSB's financing statement was filed before the amendment to K.S.A. § 84–9–402(1) (Supp.1982) was enacted, any defect in the financing statement brought about by the *Werth* decision was cured by the amendment. The sufficiency of CSB's financing statement must therefore be judged under amended K.S.A. § 84–9–402(1), and not under the *Werth* decision.

■ As a starting point, the statutory amendment does not validate "super-general descriptions such as 'a personal property.'" B. Clark, supra ¶ 2.9[5][a], at 2–46 n. 176 (1980); *In Re Fuqua,* 461 F.2d 1186 (10th Cir.1972) (financing statement describing collateral as "all personal property" insufficient to perfect security interest).

■ The instant financing statement, however, does not simply list "all personal property". Rather, it claims as collateral "all property" including specific categories of property and then states "and other personal properity [sic] . . . ." Specific categories of property have been approved as collateral descriptions. The phrase "all livestock" is sufficient to perfect a security interest in hogs and increases. *United States v. Southeast Miss. Livestock Farmers Assoc.,* 619 F.2d 435, 29 UCC Rep. 311 (5th Cir.1980). The livestock description does not have to indicate where the livestock is located. *In Re Lee,* 14 B.R. 804, 32 UCC Rep. 580 (Bankr.E.D.Tenn.1981). To perfect an interest in equipment or machinery, the following are sufficient: "farm equipment". *United States v. Crittenden,* 600 F.2d 478, 27 UCC Rep. 298 (5th Cir.1979); "All equipment and machinery." *National Equip. Rental Ltd. v. United States,* 25 UCC Rep. 566 (C.D.Cal.1978). The financing statement is merely a "red flag warning" that a security interest may exist in certain described collateral. *Allis Chalmers Credit Corp. v. Cheney Invest., Inc.,* 227 Kan. 4, 8, 605 P.2d 525 (1980). The Court holds the instant descriptions of "hog equipment" and "farm machinery" are sufficient red flag warnings to perfect a security interest in the debtors' machinery and equipment, which CSB seeks to reclaim. The debtors have not claimed the machinery and equipment as exempt. The trustee agrees

reclamation should be granted, and therefore the Court grants CSB reclamation of the equipment and machinery.

■ The only remaining controverted item sought to be reclaimed is the debtors' grain on hand. CSB has a security interest in the grain by virtue of the security agreement dated February 6, 1978. CSB does not have a perfected security interest, however, because the only classification in the financing statement applicable to grain is "all personal property", a phrase insufficient to perfect a security interest. *In Re Fuqua,* supra; *In Re H.L. Bennett Co.,* 588 F.2d 389 (3rd Cir.1978). Because CSB, however, has a security interest in the grain, albeit an unperfected security interest, as between CSB and the debtors, CSB still has a right of repossession. K.S.A. § 84-9-503 (Supp.1982). Thus, as between CSB and the debtors, the issue of perfection is irrelevant. The Court notes the debtors neither listed any grain as an asset in their petition schedules, nor claimed any grain as exempt. The trustee has agreed in a brief that CSB should be entitled to reclaim its collateral, yet, since grain is not reported as an asset to be administered, the trustee would not be abandoning that which the estate does not have. Should it develop that grain does exist, this request should again be brought to the Court's attention.

Finally, it appears CSB is properly perfected and has a proper security interest in the farm title vehicles. Therefore, reclamation of these items of personal property are granted.

In summary, CSB is granted reclamation of the following collateral:

1976 1 Ton dual rear wheel Chevy PU, ID # CC5346B121994

1974 Hillsboro gooseneck train trailer, ID # 6384, style 77

1976 Featherlight gooseneck hog trailer, ID # 1275121, style Mx

1973 Homette trailerhouse, ID # 035 11876 G

All livestock, hog equipment, listed as: 20 hog feeders; 14 pig feeders; 44 hog crates; 8 bulk tanks; 1 grinder

The foregoing constitutes Findings of Fact and Conclusions of Law under Bankruptcy Rule 752 and Rule 52(a) of the Federal Rules of Civil Procedure.